MARY DIRRANE, Respondent, *v.* THE CITY OF NEW YORK and Others, Defendants, Impleaded with CLEMENTE CONTRACTING COMPANY, INC., Appellant.

First Department, March 16, 1934.

*Anthony J. Romagna* of counsel [*Arthur H. Printz* with him on the brief; *Anthony J. Romagna,* attorney], for the appellant.

*Lester M. Emmett* of counsel [*Jeremiah A. O'Leary,* attorney], for the respondent.

MARTIN, J. The plaintiff, on November 17, 1929, was injured while riding in a taxicab. Wishing to return home after a visit to a friend and finding it raining, she called a taxicab to take her to the nearest subway station, which was at the corner of One Hundred and Seventieth street and Jerome avenue. On the way

there the driver crossed the Grand Concourse where the defendant, appellant, was constructing part of the New York city subway system, under a contract with the city of New York. The taxicab was traveling in a westerly direction on One Hundred and Seventy-first street across the Grand Concourse, when an accident occurred which resulted in the plaintiff sustaining the injuries for which she seeks damages in this action.

It is important to note that the plaintiff signed and filed a claim with the city of New York stating that a loose plank caused the accident. That statement says: " That the condition which caused the injuries and damages complained of was the presence on the crossing of a runway made of planks about 16 feet long and about 6 inches thick. This runway was about twenty feet wide and about 16 feet long. The planks were not properly secured with the result that the taxicab in which the plaintiff was riding from east to west and through 171st Street, in a westerly direction, *went over a loose plank which upended the taxicab* and the plaintiff was thrown from her seat and struck her head on the top of the cab and was then thrown down to the floor of the cab, striking her back."

On the trial the plaintiff advanced a very different reason for the accident and sought to show improper construction of a ramp connecting traffic lanes.

The attorneys in the case agreed that on the Grand Concourse at One Hundred and Seventy-first street there were three lanes for traffic, an easterly lane about thirty-five feet wide, a center lane about fifty-three feet wide, and a westerly lane about thirty-five feet wide. The first or easterly and the last or westerly lanes were paved with concrete, but the center lane, which was over the subway construction work, was covered with planking or decking, which was comparatively even.

Ignatz Rosenzweig, the taxicab driver, a witness for the plaintiff, testified to conditions existing at the scene of the accident. He said that he passed over the first lane of concrete and then over the planking on the middle lane while traveling at about six to eight miles an hour. In going from the middle to the third or westerly lane of concrete, it was necessary to go down a ramp about four to six feet wide, composed of heavy planks with heavy timber underneath. The ramp connected and made level the middle and the westerly lane, there being a difference in height. As the taxicab descended this ramp, the front wheels dropped from the end of the ramp onto the concrete of the third lane, causing a terrific jolt which threw him over on his side. Before he could apply the brakes, the rear of his car came down with force, landing on the

concrete with another jolt. This witness said that the drop from the top of the edge of the ramp to the third lane was about five to eight inches.

After the accident the cab driver returned to the scene with a police officer named Ellis. The officer ran his own car over the ramp without any serious inconvenience. *His report made at the time stated that the planking gradually sloped down to within three or four inches of the concrete.* He said he did not examine the concrete alongside the edge of the ramp and, therefore, did not know whether or not there was a hole in it. In any event he had no difficulty in crossing at the place where plaintiff says the accident occurred.

The plaintiff testified that while seated inside the taxicab she was thrown up in the air from the seat and her head struck the roof of the cab. She received serious injuries to her spine and was rendered unconscious.

Joseph Flaherty, a first cousin of the plaintiff, testified that he was called from his home by a police officer after the accident; that he went to the hospital and took the plaintiff to the home of her brother and at about twelve o'clock that same evening he visited the scene of the accident and said he found a drop of about four or five inches from the end of the ramp to the top of a puddle of water that had collected alongside the ramp and on the concrete of the third or westerly lane. He testified that he did not know the depth of the water, which covered a space about three or four feet wide.

The plaintiff contends that the foregoing evidence clearly established that the accident and the resultant injuries to the plaintiff were caused by the drop from the ramp to the adjoining pavement. It is argued that the defendant, appellant, constructed and maintained a ramp that was so unsafe and dangerous that it constituted a nuisance upon the public highway for which the defendant is liable without proof of notice; that there is no arbitrary rule as to what may or may not be a dangerous drop or depression in a highway and that the charge of the court fully covered the subject and contained no reversible errors.

The defendant, appellant, contends that the plaintiff has wholly failed to prove facts sufficient as a matter of law to warrant a recovery against it either on the theory of a nuisance or negligence; that the court submitted the case to the jury on a wholly erroneous theory and despite the lack of exception to such charge, this court may reverse the judgment for any errors contained therein, especially in view of the fact that the plaintiff failed to prove any cause of action. It is further contended that there was no proof of nuisance or the length of time the depression existed or that it

existed for one hour or for any period of time prior to the accident; that there was no proof of faulty construction or how the ramp was originally constructed or whether it was in need of repair at any time.

In support of its defense the appellant produced a witness named Demlein, an inspector of construction for the board of transportation, who said he saw the planking the day before the accident and that the most westerly board on the ramp was bevelled down to within an inch or two of the westerly roadway. On direct examination he testified as follows: " Q. Will you tell us exactly how that ramp was, did it go down to the level of the street? A. Why, as I remember, there was a slight slope and the last piece of decking was bevelled off to within about an inch or two of the west roadway. * * * Q. Did you make an inspection of the ramp on that day before this accident? A. Yes, we always did, every evening. Q. Will you tell us the condition of the ramp when you inspected it at that time? A. As I remember, the ramp was in perfect condition. That is, there were no loose timbers that I recall. One thing we always look out for was loose timbers. Q. Did you at that time see any drop, as has been testified to, of four inches? A. No. Q. Did you see any hole alongside of it on the pavement? A. No."

The above testimony was corroborated by that of William Casey, superintendent of construction for the appellant, who said he examined the ramp on the morning of the accident and that there was a drop of no more than a couple of inches. Carl Pierleoni, engineer of the appellant, said that there might have been a drop of two inches. It is urged that the testimony of these three witnesses proved that the ramp was properly constructed and maintained and did not constitute a nuisance.

The complaint appears to be for negligence, but it was amended on the trial to conform the pleading to the proof and the attorney for the plaintiff contends that the complaint finally set forth a cause of action in nuisance.

In its charge the court said: " If you find from the evidence that the temporary roadway was built according to the approved methods of construction, then you bring in a verdict for the defendant. If on the other hand you find that the roadway was defectively constructed, then you bring in a verdict for the plaintiff."

The attorney for the appellant concisely stated his position in a few words, as follows: " Mr. Foley: There is no testimony that this was improperly constructed. There is no testimony it existed, if it did exist, for an hour or two hours."

Although there may be some question as to whether there was a

drop of from two to five inches, the important question is, was there a nuisance? To establish a nuisance where the highway has been disturbed and to recover on that theory, it must be shown there was improper construction in the first instance or that a dangerous condition was known and permitted to exist for so long a period that it became a nuisance. (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340.) If the construction was proper in the first instance and was in need of repair for a short time only before the accident, the recovery must be on the theory of negligence and notice must be proved. (*Glenn* v. *Oakdale Contracting Co., Inc.*, 257 N. Y. 497; *Schmidt* v. *City of New York*, 179 App. Div. 667; affd., 228 N. Y. 572; *Dwyer* v. *Neckerman Co., Inc.*, 223 App. Div. 39.)

It is conceded that no notice was proved or attempted to be proved in this case that the ramp was in need of repairs and it nowhere in the record is shown that this ramp was improperly constructed by the defendant, appellant, or that it was in need of repair for any appreciable length of time.

The plaintiff evidently realized the necessity of showing the improper construction of the ramp. In an effort to prove that fact, a witness named John J. Cope was interrogated by the attorney for plaintiff. He was asked about the approved method of building a ramp and described such a method. He also said he would not approve a ramp having a four-inch drop. He did not, however, say that this ramp when constructed had any such drop, but, quite to the contrary, described how this particular ramp was built. It nowhere appears that he testified to an improper construction or improper maintenance of this ramp.

The difficulty with plaintiff's case is to find any evidence that the condition of the ramp constituted a nuisance. The witness Demlein having testified that the ramp was in perfect condition and that there was no drop of four inches or any hole alongside the edge of the ramp, his testimony negatived plaintiff's claim. Casey also said the ramp was in good condition; that there was no drop as claimed; that there might " be a drop of a couple of inches, which is not out of the ordinary in decking at all, temporary decking; " that there were emergency men watching these conditions and that there was no hole in the roadway next to the decking. Pierleoni testified that prior to November seventeenth there was no drop of four inches from the ramp to the concrete.

We are of the opinion that the absence of proof that this ramp was not originally constructed in a proper manner or that it had been out of repair for any period of time, requires a reversal of the judgment.

There was not sufficient evidence adduced to prove the existence

of a nuisance in this case. The judgment and order so far as appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

O'MALLEY and UNTERMYER, JJ., concur; FINCH, P. J., and MERRELL, J., dissent.

Judgment and order so far as appealed from reversed and a new trial ordered, with costs to the appellant to abide the event.